**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Harvey Beitch,<br><br>    Plaintiff,<br><br>v.<br><br>Chris Magnus, *et al.*,<br><br>    Defendants. | No. CV-18-0067-TUC-BGM<br><br>**ORDER** |

    Currently pending before the Court is Defendants Chris Magnus, Justin Lane, Mickey Petersen, Dennis J. Miller, Paulina Reed, Chelsea Lynn Gutierrez, Robert Jude Miranda, David W. Hill, Colin Jefferson Hyde, Daniel Rodriguez, Brendan Wiberg, and Cynthia Kozda's (the "City Defendants") Motion for Summary Judgment (Doc. 50). The City Defendants have also filed a Statement of Facts in Support of Their Motion for Summary Judgment ("SOF") (Doc. 51), as well as a Supplemental State of Facts in Support of Their Motion for Summary Judgment (Doc. 56). Plaintiff filed a Motion of Supplemental Facts to Support Plaintiff Aaron Beitch Opposition to Defendant's Motion for Summary Judgment (Doc. 62), which this Court construed as a response. *See* Order 4/29/2019 (Doc. 65). Plaintiff then filed an Amended Motion of Opposition to Summary Judgment (Doc. 67) which the Court construes as a supplemental response. Plaintiff also filed an Amended Motion of Facts in Support of Plaintiff Aaron Beitch [sic] Opposition to Summary Judgment (Doc. 68). The City Defendants filed their Reply to Plaintiff's Amended Motion of Opposition to Summary Judgement (Doc. 67) and Motion to Strike Plaintiff Aaron Beitch Amended Motion of Facts in Support of Plaintiff Aaron Beitch

Opposition to Summary of Judgment (Doc. 68) (Doc. 69). In turn, Plaintiff filed a Response to Defendants Opposition to Strike Plaintiff Motion of Facts in Support of Plaintiff Opposition to Summary Judgment (Doc. 71). As such, the motion is fully briefed and ripe for adjudication. Also pending are Plaintiff's Amended Motion for Leave to Allow Non-Electronic Filing of Exhibit #2 (Doc. 66) and the City Defendants' Motion to Strike Plaintiff Aaron Beitch [sic] Response to Defendants Opposition to Strike Plaintiff Motion of Facts in Support of Plaintiff [sic] Opposition to Summary of Judgment Doc. 71 (Doc. 72).

The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. In its discretion, the Court finds this case suitable for decision without oral argument. *See* LRCiv. 7.2(f). The Parties have adequately presented the facts and legal arguments in their briefs and supporting documents, and the decisional process would not be significantly aided by oral argument.

## I.   FACTUAL BACKGROUND

Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983, alleging a violation of his civil rights during a police encounter. *See* Compl. (Doc. 1). The Court views the facts, as it must, in the light most favorable to Plaintiff.

### A.   *Police Encounter*

On August 9, 2017, at approximately 4:30 a.m., Tucson Police Department ("TPD") officers were dispatched to a shots fired or a suspect with a gun call at an apartment complex near 14th Avenue and Kelso Street. Defs.' SOF (Doc. 51), Event Chronology—E172210112 (Exh. "3") (Doc. 51-1) at 18[1] & Miller Decl. (Exh. "8") (Doc. 51-1) at ¶¶ 3, 6 & Hyde Decl. (Exh. "9") (Doc. 51-1) at ¶ 3. The call details indicate that "multiple people" were heard screaming at each other and a gun was mentioned. Defs.'

---

[1] Page reference is to the CM/ECF page number for clarity.

SOF (Doc. 51), Exh. "3" at 18. A male subject with a gun was described as a black male, twenties, black hat, white shirt, and jeans, with a pistol in his hand. *Id.*, Exh. "3" at 18; *see also* Pl.'s Response re SOF (Doc. 68) Wiberg Body Worn Camera Full Length Video (Exh. "2") at 3:25–3:31. The officers parked down the street and moved on foot on 14th Avenue. Defs.' SOF (Doc. 51), Exh. "8" at ¶¶ 4, 6 & Exh. "9" at ¶ 4, 6. Officers Hyde and Miller had their weapons out in the low ready position. *Id.*, Exh. "8" at ¶ 5 & Exh. "9" at ¶ 5.

Officer Wiberg was wearing a body camera, and it captured the scene and the officers' activity. *Id.*, Wiberg Decl. (Exh. "10") (Doc. 51-1) at ¶¶ 3–6. One Officer was using the light on top of his rifle to illuminate the cars parked along the side of the road as they progressed down the street. *Id.*, Wiberg Body Worn Camera (Exh. "1") at 1:15–1:30, 2:38–2:40; Pl.'s Response re SOF (Doc. 68), Exh. "2" at 8:38–9:14. Officers would have stopped anyone that they encountered to gather information. Defs.' SOF (Doc. 51), Exh. "8" at ¶ 11.

Shortly after TPD officers started their canvass of the area, Plaintiff Beitch was observed getting into a car on the street. Defs.' SOF (Doc. 51), Wiberg Body Worn Camera (Exh. "1") at 1:14–1:20. Plaintiff came out of a nearby apartment. *Id.*, Exh. "1" at 2:15–2:30. Officers noted Plaintiff was wearing a white t-shirt and jeans. Pl.'s Response re SOF (Doc. 68), Exh. "2" at 8:28–8:45. Officers shined their flashlights on Plaintiff and told him to stop. Defs.' SOF (Doc. 51), Exh. "1" at 1:14–1:20. Officers shouted at Plaintiff to get out of the car. *Id.*, Exh. "1" at 1:45–1:50. Plaintiff stepped out of the driver's side of his car and showed his hands. *Id.*, Exh. "1" at 1:48–1:53; Pl.'s Response re SOF (Doc. 68), Exh. "2" at 8:57–9:07. Officers Reed and Kozda approached Plaintiff while another officer maintained the spotlight on Plaintiff until other officers approached with flashlights and provided additional light. Defs.' SOF (Doc. 51), Wiberg Body Worn Camera (Exh. "1") at 2:10–2:15; Pl.'s Response re SOF (Doc. 68), Exh. "2" at 8:57–9:23. Plaintiff identified himself to Officer Reed and indicated that he lived nearby. Defs.' SOF (Doc. 51), Exh. "1" at 2:15–2:30; Pl.'s Response re SOF (Doc.

68), Exh. "2" at 9:25–9:40. Officer Kozda secured Plaintiff in handcuffs while Officer Reed asked him his address. Defs.' SOF (Doc. 51), Kozda Decl. (Exh. "11") at ¶¶ 8–10; Pl.'s Response re SOF (Doc. 68), Exh. "2" at 9:25–9:40. Officer Reed verified Plaintiff's identity and verified that he was not involved in the disturbance the officers were investigating. Defs.' SOF (Doc. 51), Exh. "11" at ¶ 11.

As soon as Plaintiff was secure, Officers Miller and Hyde continued down the street, away from Plaintiff. *Id.*, Exh. "1" at 2:7–2:32. When Officer Reed asked Plaintiff whether he had identification, Plaintiff responded that it was in his pocket. Defs.' SOF (Doc. 51), Beitch Depo. 11/16/2018 (Exh. "7") at 63:20–64:5, 91:15–92:19. Officer Reed frisked Plaintiff and obtained his identification. *Id.*, Exh. "7" at 91:19–92:3. Officer Reed was able to verify Plaintiff's identity within a few minutes and she determined that he was not involved in the disturbance that the officers were investigating. *Id.*, Exh. "11" at ¶ 11. At the conclusion of her investigation of Plaintiff, Officer Reed returned his identification and released him. *Id.*, Exh. "7" at 112:1–9. At no time during the encounter did officers have their weapons pointed at Plaintiff's head. *Id.*, Exh. "1" at 1:40–2:30. After the brief interaction with Plaintiff, TPD officers continued their canvass of the area. *Id.*, Exh. "1" at 2:15–2:50 & Exh. "8" at ¶ 12.

In the end, Officers Wiberg, Gutierrez, Miranda, Rodriguez, and Hill did not have physical contact with Plaintiff at the scene or point weapons at him. *Id.*, Wiberg Decl. (Exh. "10"), Hill Decl. (Exh. "12"), Miranda Decl. (Exh. "18"), Rodriguez Decl. (Exh. "19"); Defs.' Suppl. SOF (Doc. 56), Gutierrez Decl. (Exh. "17"). Sergeant Hill was not on scene when officers made contact with Plaintiff. Defs.' SOF (Doc. 51), Exh. "12" at ¶ 7. Lastly, Officer Reed was wrapping up her investigatory stop of Plaintiff when Sergeant Hill arrived. *Id.*, Exh. "12" at ¶ 8.

### B. Tucson Police Department Complaint

After the encounter with TPD officers, Plaintiff lodged a formal complaint with the department. Defs.' SOF (Doc. 51), Hill Decl. (Exh. "12") at ¶ 10 & Petersen Decl. (Exh. "13") at ¶¶ 4–6. Plaintiff's complaint was reviewed by the Office of Professional

Standards ("OPS"). *Id.*, Exh. "12" at ¶ 10 & Exh. "13" at ¶ 3–4. Sergeant Petersen conducted the OPS investigation. *Id.*, Exh. "13" at ¶ 4 & Lane Decl. (Exh. "14") at ¶ 5. Sergeant Petersen determined that the officers exhibited appropriate safety and tactical techniques during their encounter with Plaintiff. *Id.*, Exh. "13" at ¶ 7. Sergeant Petersen further determined that two policy violation did occur, including 1) Officer Hyde failing to turn on his body worn camera and 2) Officer Reed failing to write a report documenting her investigative stop of Plaintiff. *Id.*, Exh. "13" at ¶ 8 & Exh. "14" at ¶ 5. Sergeant Petersen did not have any supervisory authority over the individual officers whose conduct he investigated. *Id.*, Exh. "13" at ¶ 10. Captain Lane, Sergeant Petersen's supervisor, concurred with Sergeant Petersen's analysis. Defs.' SOF (Doc. 51), Petersen Decl. (Exh. "13") at ¶ 9 & Lane Decl. (Exh. "14") at ¶ 5. The City of Tucson's Independent Police Auditor Mitchell A. Kagan reviewed the OPS investigation and findings related to Plaintiff's formal complaint and concurred with the same. *Id.*, Kagan Decl. at ¶ 5.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986), "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. Thus, factual disputes that have no bearing on the outcome of a suit are irrelevant to the consideration of a motion for summary judgment. *Id.* In order to withstand a motion for summary judgment, the nonmoving party must show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Moreover, a "mere scintilla of evidence" does

not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512. The United States Supreme Court also recognized that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

## III.  ANALYSIS

### A.  *Amended Motion for Leave to Allow Non-Electronic Filing of Exhibit #2–Officer Wiberg's Full-Length Body Worn Camera Video*

Plaintiff filed an Amended Motion for Leave to Allow Non-Electronic Filing of Exhibit #2 Full-Length BWC Video Taken from Defendant Officer Wiberg, along with Audio CDs Ops Hearing of All Defendant Officers, 911 Audio CD, Supporting Paper (Doc. 66). On April 29, 2019, the Court issued its Order granting Plaintiff's request to file the full-length video of Officer Wiberg's body worn camera. *See* Order 4/29/2019 (Doc. 65). Plaintiff did not submit any additional non-paper exhibits with his amended motion. *See* Pl.'s Amended Motion for Leave to Allow Non-Electronic Filing (Doc. 66) and related docket text. In light of the Court's previous ruling, Plaintiff's amended motion is moot. The Court will, however, consider the additional documents submitted with Plaintiff's motion (Doc. 66) to the extent that they are relevant to his opposition of the City Defendants' motion for summary judgment. Accordingly, Plaintiff's Motion for Leave to Allow Non-Electronic Filing (Doc. 66) is DENIED AS MOOT in part and GRANTED in part.

### B.  *Evidentiary Objections*

#### 1. Factual Admissions

Defendant asserts that Plaintiff's responsive filings do not comply with this district's Local Rules. *See* Defs.' Reply (Doc. 69) at 4. Defendants also urge that because Plaintiff failed to properly controvert their statement of facts, the Court should

deem their facts "admitted" for purposes of summary judgment. *See id.* at 5.

Federal Rule 56(c) mandates that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials [in the record.]" Fed. R. Civ. P. 56(c)(1). A fact that "cannot be presented in a form that would be admissible in evidence" is grounds for objection. Fed. R. Civ. P. 56(c)(2). Moreover, the Rules of Practice of the United States District Court for the District of Arizona ("Local Rules") require that"[e]ach additional fact . . . must refer to a specific admissible portion of the record where the fact finds support." LRCiv. 56.1(b). After Plaintiff filed his initial response, the Court notified him of the requirements of Rule 56, Federal Rules of Civil Procedure, and LRCiv. 56.1, and allowed him to supplement his response accordingly. *See* Order 4/3/2019 (Doc. 60). It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247 251 (7th Cir. 1995)).

Here, Plaintiff's controverting facts argues his position, but does not refute the facts put forth by the City Defendants. *See* Pl.'s Amended Motion of Facts (Doc. 68). Rather, Plaintiff has outlined what occurred, as well as provided documents exchanged as part of the disclosure process. *See id.*; *see also* Pl.'s Mot. for Leave to Allow Non-Electronic Filing (Doc. 66). Although the Court will not summarily grant Defendants summary judgment for these shortcomings, bare factual allegations and conclusory statements have not been given any weight.

### 2. Motion to Strike

The City Defendants filed a Motion to Strike Plaintiff Aaron Beitch [sic] Response to Defendants Opposition to Strike Plaintiff Motion of Facts in Support of Plaintiff [sic] Opposition to Summary of Judgment Doc. 71 (Doc. 72). The City Defendants contend Plaintiff's response is an improper sur-reply and should be stricken. As an initial matter,

- 7 -

the City Defendants chose to file a motion to strike embedded in their Reply (Doc. 69). Plaintiff was entitled to respond to the motion. *See* LRCiv. 7.2. The Court declines the City Defendants' invitation to penalize Plaintiff for being *pro se* and not fully understanding what he was and was not allowed to respond to in Defendants' motion. To the extent that it is relevant, the Court will consider Plaintiff's Response (Doc. 72) in its entirety. The City Defendants' Motion to Strike (Doc. 72) is DENIED.

### C. *Summary Judgment*

The City Defendants seek summary judgment because their actions are qualifiedly immune or otherwise non-actionable. Defs.' Mot. for Summ. J. (Doc. 50) at 4–10. Relying on various excerpts of TPD policy, Plaintiff argues that none of the officers are entitled to qualified immunity. Pl.'s Response (Doc. 67) at 10–26.

### 1. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d (2011) (citations omitted); *see also Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (internal quotation omitted). These prongs may be addressed in any order, depending on the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d (2009). In its analysis, the Court must view the facts "in the light most favorable to the injured party." *Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013) (citations omitted).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that

right.'" *al-Kidd*, 563 U.S. at 741, 131 S. Ct. at 2083 (quoting *Anderson v. Creighton*, 493 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)) (alterations in original).  The Supreme Court of the United States has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality."  *City and County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, —, 135 S. Ct. 1765, 1775–76, 191 L.Ed.2d 856 (2015) (quoting *al-Kidd*, 563 U.S. at 742, 131 S. Ct. at 2084).  Although the Supreme Court of the United States does "not require a case directly on point before concluding that the law is clearly established, . . . existing precedent must have placed the statutory or constitutional question beyond debate."  *al-Kidd*, 563 U.S. at 741, 131 S. Ct. at 2083.  "Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures."  *Sheehan*, 575 U.S. at —, 135 S. Ct. at 1776.  As such, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

## 2.  The Fourth Amendment

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."  *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981)).  For the police to conduct a valid stop, they must "have a reasonable suspicion supported by articulable facts that criminal activity may be afoot."  *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989) (internal quotes and citation omitted).  "[T]he level of suspicion required for a *Terry* stop[, however,] is obviously less demanding than that for probable cause."  *Id.* at 8, 109 S. Ct. at 1585 (internal citations omitted).  "[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal

activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Terry v. Ohio*, 391 U.S. 1, 30, 88 S. Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968).

"Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (quoting *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc)). "The reasonable-suspicion standard is not a particularly high threshold to reach." *Id.* Furthermore, although "a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* (quoting *Arvizu*, 534 U.S. at 274, 122 S. Ct. 744) (citations and internal quotation marks omitted).

When making a reasonable-suspicion determination, the reviewing court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002) (citations omitted); *see also United States. v. Alvarez*, 899 F.2d 833, 836 (9th Cir. 1990). In so doing, officers are allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* at 273, 122 S. Ct. at 750-51. (citations omitted); *see also Valdes-Vega*, 738 F.3d at 1078. Moreover, what may seem to be innocuous conduct when viewed in isolation may be appropriately considered when considering the totality of the circumstances; thus, it is inappropriate to

view factors in isolation and to give no weight to factors which may have an innocent explanation. *Arvizu*, 534 U.S. at 273-75, 122 S. Ct. at 750-51; *see also Cotterman*, 709 F.3d at 970 ("It is not our province to nitpick the factors in isolation but instead to view them in the totality of the circumstances."). Furthermore, "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Valdes-Vega*, 738 F.3d at 1078-79 (citing *Arvizu*, 534 at 277, 122 S. Ct. 744) (alterations in original).

### a. Officers Reed and Kozda

The City Defendants assert that Officers Reed and Kozda are entitled to qualified immunity for their encounter with Plaintiff. Defs.' Mot. for Summ. J. (Doc. 50) at 5–6. The Court agrees.

Here, TPD officers were dispatched to a shots fired or a suspect with a gun call at an apartment complex near 14th Avenue and Kelso Street in the wee hours of the morning. Defs.' SOF (Doc. 51), Event Chronology—E172210112 (Exh. "3") (Doc. 51-1) at 18 & Miller Decl. (Exh. "8") (Doc. 51-1) at ¶¶ 3, 6 & Hyde Decl. (Exh. "9") (Doc. 51-1) at ¶ 3. The call details indicate that "multiple people" were heard screaming at each other and a gun was mentioned. *Id.*, Exh. "3" at 18. A male subject with a gun was described as a black male, twenties, black hat, white shirt, and jeans, with a pistol in his hand. *Id.*, Exh. "3" at 18; *see also* Pl.'s Response re SOF (Doc. 68), Wiberg Body Worn Camera Full Length Video (Exh. "2") at 3:25–3:31. The officers parked down the street and moved on foot on 14th Avenue. Defs.' SOF (Doc. 51), Exh. "8" at ¶¶ 4, 6 & Exh. "9" at ¶ 4, 6. The officers had reasonable suspicion that a crime was afoot. There were no people on the street and Plaintiff was dressed in a white t-shirt and jeans. Pl.'s Response re SOF (Doc. 68), Exh. "2" at 8:28–9:11

The Ninth Circuit Court of Appeals has observed:

> Under ordinary circumstances, drawing weapons and using handcuffs are not part of a *Terry* stop. *Washington v. Lambert*, 98 F.3d 1181, 1187 (9th Cir. 1996). Nevertheless, "we allow intrusive and aggressive police conduct without deeming it an arrest . . . when it is a reasonable response to

> legitimate safety concerns on the part of the investigating officers." *Id.* at 1186; *accord Alexander v. County of Los Angeles*, 64 F.3d 1315, 1320 (9th Cir. 1990) ("it is well settled that when an officer reasonable believes force is necessary to protect his own safety or the safety of the public, measures used to restrain individuals, such as stopping them at gunpoint and handcuffing them, are reasonable.").

*United States v. Miles*, 247 F.3d 1009, 1012–13 (alterations in original). Plaintiff was the first individual that the officers encountered. Officers Kozda and Reed briefly detained him and confirmed his identity. Defs.' SOF (Doc. 51), Beitch Depo. 11/16/2018 (Exh. "7") at 63:20–64:5, 91:15–92:3 & Kozda Decl. (Exh. "11") at ¶¶ 8–10. Once this was accomplished, Plaintiff's belongings were returned, and he was released and free to leave. *Id.*, Exh. "7" at 112:1–9. The entire encounter did not last more than two (2) to three (3) minutes. Based upon the totality of the circumstances, Officers Kozda and Reed executed a proper *Terry* stop. *See United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L.Ed.2d 740 (2002). As such, Plaintiff did not suffer a violation of his constitutional rights and Officers Kozda and Reed are entitled to qualified immunity.

### b. Officers with weapons in low ready position

Plaintiff urges that "[o]fficers who had their weapons didn't have their weapons out didn't' have weapons at the low-ready position when they were approaching Plaintiff[.]" Pl.'s Response (Doc. 67) at 16. The City Defendants assert that the body camera video establishes that the officers did not hold Plaintiff at gunpoint. Defs.' Mot. Summ. J. (Doc. 50) at 6. As such, the City Defendants argue that Plaintiff bears the burden "to demonstrate that clearly established law would prohibit officers from conducting their sweep of his neighborhood with weapons in the low ready position." *Id.*

"To determine the constitutionality of a seizure we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S. Ct. 1694, 1699, 85 L. Ed. 2d 1 (1985) (quotations and citations omitted). The Ninth Circuit Court of Appeals delineated a three-stage approach to excessive force claims. *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018). The

1 court of appeals counsels consideration of 1) "the severity of the intrusion . . . by
2 evaluating the type and amount of force inflicted"; 2) "the government's interests by
3 assessing the severity of the crime[,] whether the suspect posed an immediate threat[,] . . .
4 and whether the suspect was resisting arrest or attempting to escape"; and 3) the
5 balancing of "the gravity of the intrusion on the individual against the government's need
6 for that intrusion." *Id.* (citations and quotations omitted).

7 Here, the video shows officers with their weapons pointed downward or moving to
8 point them downward as they made contact with Plaintiff. Pl.'s Response re SOF (Doc.
9 68), Wiberg Body Worn Camera Full Length Video (Exh. "2") at 8:28–9:15; *see also*
10 *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007)
11 (finding facts should be viewed "in the light depicted by the videotape"). Thus, the type
12 of force used was minimal. Secondly, the officers were evaluating everyone moving
13 around at 4:30 a.m. as they were investigating a report of a disturbance involving a gun.
14 Third, the balance between the gravity of the intrusion versus the government's need for
15 that intrusion weighs in favor of the officers. The officers contact with Plaintiff was
16 brief, he was restrained long enough to confirm his identification. Defs.' SOF (Doc. 51),
17 Kozda Decl. (Exh. "11") (Doc. 51-1) at ¶ 11. Further, responding officers who had their
18 weapons drawn, only did so as they approached Plaintiff and quickly holstered them or
19 moved off down the street. **[see video]** Based on the totality of the circumstances, the
20 minimal force exerted by the officers was reasonable to ensure the safety of all involved.

21 **c. "Participating" officers**

22 Plaintiff has sued every officer that was present during August 9, 2017 incident.
23 *See* Compl. (Doc. 1); Defs.' SOF (Doc. 51), Beitch Depo. 11/16/2018 (Exh. "7") at 36:5–
24 46:21.

25 "Liability under section 1983 arises only upon a showing of personal participation
26 by the Defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The Ninth
27 Circuit Court of Appeals further requires that the officers can only be found "liable for
28 their 'integral participation' in the unlawful conduct." *Chuman v. Wright*, 76 F.3d 292,

294 (9th Cir. 1996). "Being a mere bystander [is] insufficient." *Id.* (citations omitted).

Here, Officer Kozda handcuffed Plaintiff, Officer Reed performed a *Terry* stop and frisk, Officers Miller and Hyde had guns out in the low ready position, and Officer Miranda issued the verbal commands to Beitch to step out of the car, shut the door, and put his hands on the hood. Defs.' SOF (Doc. 50), Miller Decl. (Exh. "8") at ¶ 5 & Hyde Decl. (Exh. "9") at ¶ 5 & Kozda Decl. (Exh. "11") ¶¶ 8–11; Pl.'s Response re SOF (Doc. 68), Wiberg Body Worn Camera Full Length Video (Exh. "2") at 8:53–9:04. Plaintiff has failed to present any evidence to suggest that Officers Wiberg, Rodriguez, and Gutierrez or Sergeant Hill were personally involved with any aspect of his detainment. As such, they cannot be said to be "integral participants" of any alleged constitutional violation and are entitled to qualified immunity.

### d. Sergeant David Hill and Chief Chris Magnus

The language of § 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell v. Dept. of Soc. Services of City of N.Y.*, 436 U.S. 658, 692, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). As such, the Supreme Court of the United States "concluded that § 1983 could not be interpreted to incorporate doctrines of vicarious liability." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986). Thus, "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989). The burden is on Plaintiff to "allege facts, no simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Here, Plaintiff has not alleged any facts to support a finding that either Sergeant Hill or Chief Magnus were personally involved in any alleged deprivation of his civil rights. Sergeant Hill did not arrive on scene until the end of the officer's encounter with Plaintiff and there is no allegation that Chief Magnus was personally involved. Defs.'

SOF (Doc. 51), Beitch Depo. 11/16/2018 (Exh. "7") at 24:24–28:23 & Hill Decl. (Exh. "12") at ¶ 8.  Therefore, regarding any Fourth Amendment violation, Plaintiff has failed to state a claim against Sergeant Hill and Chief Magnus.

### 3. Due Process

Plaintiff asserts a violation of his procedural due process rights against the TPD officers.  Pl.'s Response to Mot. to Strike (Doc. 71) at 6.  Plaintiff alleges that he did not receive a fair administrative hearing; however, he has failed to delineate what process was due or how Chief Chris Magnus, Captain Justin Lane, or Sergeant Mickey Petersen violated these rights.  Plaintiff's complaint was received, reviewed and investigated by Sergeant Petersen who was independent of the officers involved, and these results were reviewed and concurred with by his superior officers, as well as with Plaintiff.  Defs.' SOF (Doc. 51), Petersen Decl. (Exh. "13") at ¶¶ 4–11.  Ultimately, Plaintiff disagreed with the outcome of their analysis.  The violations of TPD's policy regarding report writing and failing to turn on a body worn camera are not constitutional violations.  Moreover, to the extent that such nebulous due process rights are coextensive with Plaintiff's Fourth Amendment rights, the officers did not violate a "clearly established" law and are entitled to qualified immunity.

## IV.   CONCLUSION

Based upon the foregoing, the Court finds that Plaintiff has failed to meet his burden in opposing Defendants' motion for summary judgment.  Accordingly, IT IS HEREBY ORDERED that:

1)   Plaintiff's Amended Motion for Leave to Allow Non-Electronic Filing of Exhibit #2 (Doc. 66) is GRANTED in part and DENIED AS MOOT in part;

2)   The City Defendants' Motion to Strike Plaintiff Aaron Beitch [sic] Response to Defendants Opposition to Strike Plaintiff Motion of Facts in Support of Plaintiff [sic] Opposition to Summary of Judgment Doc. 71 (Doc. 72) is DENIED;

3)   The City Defendants' Motion for Summary Judgment (Doc. 50) is

GRANTED; and

    4)    **The Clerk of the Court shall enter judgment and close the case.**

Dated this 1st day of June, 2020.

                                                    _____
                                                  Honorable Bruce G. Macdonald
                                                  United States Magistrate Judge